IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
LAS VEGAS DIVISION

| | |
|---|---|
| JOHN ANTHONY CASTRO<br>12 Park Place, Mansfield, TX 76063<br><br>　　Plaintiff,<br><br>v.<br><br>SECRETARY OF STATE FRANCISCO V. AGUILAR<br>101 N Carson Street, Suite 3, Carson City, NV 89701<br><br>DONALD JOHN TRUMP<br>1100 S. Ocean Blvd, Palm Beach, FL 33480<br><br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No. 2:23-cv-01387-RFB-BNW |

FILED / ENTERED        RECEIVED / SERVED ON
COUNSEL/PARTIES OF RECORD

SEP 0 5 2023

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

I.   CLAIM FOR RELIEF ................................................................................................ 3
II.  MORE DEFINITIVE STATEMENTS AND ANALYSES ........................................... 6

## TABLE OF AUTHORITIES

### Cases

*aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013) ............................................ 5
*Butler*, 2 Bart. El. Cas. 461 (1868) ......................................................................................... 13
*Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) .............................. 15
*Citizens for Resp. & Ethics in Washington v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019) ........ 7
*Citizens United v. FEC*, 558 U.S. 310 (2010) ......................................................................... 6
*Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) .................................................... 5
*Fulani v. League*, 882 F.2d 621 (2d Cir. 1989) ...................................................................... 6
*Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) ............................................................. 5
*Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) ................................................................................ 14
*Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815) ............................................................. 15
*Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012) ....................................................... 5
*In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) ....................................................................... 11
J.G. Randall, *The Civil War and Reconstruction* 707 (1937) (first omission in original) ...... 11
*La. Energy and Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998) ........................... 6
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ......................... 7
*McConnell v. FEC*, 540 U.S. 93, 107 ...................................................................................... 6
*McKee v. Young*, 2 Bart. El. Cas. 422 (1868) ....................................................................... 11
*Mendoza v. Perez*, 754 F.3d 1002, 1011 (D.C. Cir. 2014) ..................................................... 6
*New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002) ...................................... 5
*Powell v. McCormack*, 395 U.S. 486 (1969) ........................................................................ 16
*Public Citizen v. FEC*, 788 F.3d 312 (DC Cir. 2015) .............................................................. 7
*Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005) (citation omitted) .................................... 2, 5
*Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005) .................................................................. 4, 5
*Sherley v. Sebelius*, 610 F.3d 69, 72-73 (D.C. Cir. 2010) ....................................................... 6
*Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) ......................................................................... 9
*U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871) ................................................................ 9, 14
*U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871) .................................................................. 16

## **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

TO THE HONORABLE COURT:

Plaintiff, JOHN ANTHONY CASTRO, appearing *pro se*, files this Complaint for Injunctive Relief against Defendants Secretary of State and Donald John Trump and alleges as follows:

### I. **CLAIM FOR RELIEF**

#### SHORT & PLAIN STATEMENT SHOWING JURISDICTION

1. Because this cause of action arises under Section 3 of the 14th Amendment to the U.S. Constitution, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

#### PARTIES

2. Plaintiff John Anthony Castro is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election who currently resides at 12 Park Place in Mansfield, Texas.

3. Defendant Secretary of State is a representative of the state being sued in official capacity.

4. Defendant Donald John Trump is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P80001571) for the 2024 Presidential Election who currently resides at 1100 South Ocean Boulevard in West Palm Beach, Florida.

5. Defendant Donald John Trump is a nominal defendant.

#### VENUE

6. Because Defendant Secretary of State operates in this district, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1). Defendant Donald John Trump is a nominal defendant.

## SHORT & PLAIN STATEMENT SHOWING ENTITLEMENT TO RELIEF

7. Because this state permits write-in candidates and their votes to be counted, ballot placement is not legally determinative of the legal inquiry as to whether an individual is a "candidate" under state law. Moreover, the U.S. Constitution, Article 1, Section 4, Clause 1, also known as the Election Clause, does not apply to Presidential elections and Presidential candidate eligibility. "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." The unambiguous and plain language of the clause shows that it is limited to Congressional elections. As such, it is the province of the federal judiciary to determine this federal question with zero involvement from the state.

8. Section 3 of the 14th Amendment creates an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility on the grounds that they engaged in or provided "aid or comfort" to an insurrection.

9. On September 29, 2020, then Commander-in-Chief of the United States Armed Forces issued an executive military order to a paramilitary organization known as the Proud Boys that was led by Chairman Enrique Tarrio when he instructed them on live television to "stand back and standby."

10. On January 6, 2021, after witnessing a large group of Trump supporters violently attacking the United States Capitol to prevent the lawful certification of the 2020 election results with the goal of unlawfully compelling Donald John Trump's inauguration on January 20, 2021 (hereafter referred to as the "January 6th Insurrection"), Defendant Donald John Trump stated on live television, "we love you, you're very special" to the

insurrectionists. Defendant Donald John Trump provided the insurrectionists with comfort in the form of words of sympathy.

11. On January 29, 2022, Defendant Donald John Trump publicly stated, "If I run and if I win, we will treat those people from January 6 fairly. We will treat them fairly. And if it requires pardons, we will give them pardons." Defendant Donald John Trump promised the insurrectionists aid in the form of executive pardons for their criminal attempt to unlawfully overturn the 2020 election results.

12. On May 4, 2023, Proud Boys Chairman Enrique Tarrio was convicted of Seditious Conspiracy. Sedition and Insurrection are synonymous terms. In effect, Enrique Tarrio, the individual to whom Defendant Donald John Trump issued an executive military order, was convicted of conspiracy to commit an insurrection.

13. On June 22, 2023, Defendant Donald John Trump hosted a fundraiser for the January 6 insurrectionists thereby assisting in the acquisition of financial aid for their legal bills.

14. Based on these instances and other acts of ratification of the acts of and sympathy with the convicted criminals of the January 6th Insurrection, Defendant Donald John Trump provided "aid or comfort" to an insurrection in violation of Section 3 of the 14th Amendment to the U.S. Constitution and is, therefore, constitutionally ineligible to pursue or hold any public office in the United States.

15. Because Plaintiff is a fellow FEC-registered Republican primary candidate, Plaintiff will suffer an injury that may be redressed by the judiciary with injunctive relief.

**DEMAND FOR RELIEF**

16. Plaintiff John Anthony Castro asks this Court to issue an injunction preventing Defendant Secretary of State from accepting and/or processing Defendant Donald John Trump's

ballot access documentation, including, but not limited to, nominating papers and nominating petitions.

17. Plaintiff requests any other relief he may be entitled to at law or equity.

## II. MORE DEFINITIVE STATEMENTS AND ANALYSES

18. The framers of Section 3 of the 14th Amendment intended the constitutional provision to be both self-executing and to provide a cause of action. More specifically, the Union sought to punish the insurrectionary Confederacy by making their ability to hold public office unconstitutional. The framers did this with the specific intent of removing the more politically popular insurrectionists from the ballot since they violated their oaths of allegiance to the U.S. Constitution and the use of peaceful political mechanisms to non-violently resolve disputes.

### PLAINTIFF'S STANDING TO BRING SUIT

19. To establish standing, a plaintiff must show that it has suffered an "injury in fact caused by the challenged conduct and redressable through relief sought from the court."[1]

20. The U.S. Court of Appeals for the D.C. Circuit has explained that political competitor standing is akin to economic competitor standing, whereby a plaintiff has standing to challenge a government action that benefits a plaintiff's competitor to the detriment of the plaintiff.[2] Political competitor standing, however, is only available to plaintiffs who can show that they "personally compete[] in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit."[3] The D.C.

---

[1] *Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005) (citation omitted).
[2] *See Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).
[3] *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) (holding that presidential candidate did not have "competitor standing" to

Circuit has also held that if a plaintiff can show he is a "direct and current competitor," then competitor standing must be recognized as a matter of established case law.[4]  Courts have recognized that a "candidate—as opposed to individual voters and political action groups—would theoretically have standing based upon a 'competitive injury'" if he could show that "he personally competes in the same arena with the same party."[5]

21.     John Anthony Castro registered as a candidate with the Federal Election Commission and is directly and currently competing against Donald J. Trump for the Republican nomination for the Presidency of the United States.  As such, Plaintiff meets all of the criteria for standing.

22.     A fellow primary candidate, whose injury would be competitive injury in the form of a diminution of votes and/or fundraising, has judicial standing to sue a candidate he or she believes is ineligible to hold office.[6]

23.     Plaintiff will suffer a concrete competitive injury if the constitutionally ineligible Defendant Donald John Trump is permitted to appear on the ballot.[7]  If the judiciary permits Defendant Donald John Trump to appear on the ballot, this will siphon off millions of votes to a constitutionally ineligible candidate in violation of Section 3 of the 14th Amendment to the U.S. Constitution.  There is no question this political competitive injury is traceable to the actual competitor, Donald J. Trump.

24.     Plaintiff understands that the competitor standing doctrine recognizes "parties

---

challenge CPD's tax-exempt status where the candidate was not eligible for tax-exempt status); *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012), *aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013) ("Plaintiff cannot show that he personally competes in the same arena with candidates who receive funding under the Fund Act because he has not shown that he is or imminently will be eligible for that funding.").
[4] *New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002)
[5] *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 n.6 (D.D.C. 2012) (emphases added) (quoting *Gottlieb*, 143 F.3d at 621)
[6] *See Fulani v. League*, 882 F.2d 621 (2d Cir. 1989).
[7] *See McConnell v. FEC*, 540 U.S. 93, 107, *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010).

suffer constitutional injury in fact when agencies… otherwise allow increased competition."[8] In accordance with the D.C. Circuit's ruling in *Mendoza v. Perez*, Plaintiff will suffer a constitutional injury in fact sufficient to confer Article III standing.[9]

25. When Section 3 of the 14th Amendment was adopted, it was specifically designed to ensure that non-insurrectionists did not have to politically compete with the more popular pro-insurrectionist politicians in the South. It was specifically designed to remove overwhelming popular pro-insurrectionists from the ballot. As such, Plaintiff is not simply within the zone of interests; Plaintiff is the precise type of person Section 3 of the 14th Amendment sought to protect.

26. Although the U.S. Supreme Court arguably abolished the doctrine of prudential standing in *Lexmark*,[10] Plaintiff satisfies prudential standing in that his injury is particularized and concrete, he satisfies Article III standing, and he is within the zone of interests sought to be protected by Section 3 of the 14th Amendment to the U.S. Constitution.[11]

27. Allowing Defendant Donald John Trump to appear on the ballot would constitute unlawful state action in violation of Section 3 of the 14th Amendment of the United States Constitution.[12]

## RELEVANT LAW & LEGAL ANALYSIS

28. Defendant Donald John Trump is a declared candidate for the Republican nomination for the Presidency of the United States for the 2024 election season.

---

[8] *See Mendoza v. Perez*, 754 F.3d 1002, 1011 (D.C. Cir. 2014) (citing to *La. Energy and Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998); *Sherley v. Sebelius*, 610 F.3d 69, 72–73 (D.C. Cir. 2010)).
[9] *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014)
[10] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)
[11] *Public Citizen v. FEC*, 788 F.3d 312 (DC Cir. 2015).
[12] *See Citizens for Resp. & Ethics in Washington v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019).

29. Article II, Section 1 of the United States Constitution states that any person who enters the Office of the President of the United States of America shall take the following Oath or Affirmation: "I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my ability, preserve, protect and defend the Constitution of the United States."

30. Since the founding of our nation, those who assume civil or military positions under federal or state law are required to take an oath and thereby state that they will defend the Constitution of the United States against all enemies, foreign and *domestic.*

31. Taking the side of a foreign enemy is covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States Constitution. It states: "Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid *and* Comfort."

32. The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution covers taking the side of a *domestic* enemy.

**Anti-Insurrection Qualification Clause**

33. Section 3 of the 14th Amendment of the United States Constitution is best described as the Anti-Insurrection Qualification Clause. It establishes that, in order to be eligible to hold any office in the United States, a person must have never violated an Oath of Office, which always includes a pledge to support the United States Constitution.

34. The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution states that "[n]o person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of

Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have *engaged in* insurrection or rebellion against the same, or given *aid or comfort* to the enemies thereof. But Congress may by a vote of two-thirds of *each* House, remove such disability."

### Amendment XIV, Section 3, Clause 1

35. Clause 1 of Section 3 of the 14th Amendment of the United States Constitution reads: "No person shall… hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath… to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

36. The word "engaged" for the purpose of Section 3 of the 14th Amendment "implies, and was intended to imply, a voluntary effort to assist the Insurrection… And further, the… action must spring from [a] want of sympathy with the insurrectionary movement."[13]

37. As the U.S. Supreme Court has articulated, "[w]ithout a statutory definition, [one must] turn to the phrase's plain meaning."[14]

38. Merriam-Webster's Dictionary defines an "insurrection" to be "an act or instance of revolting against civil authority or an established government." An instance is "a step, stage, or situation viewed as part of a process or series of events." Participation in the early or late stages of an event still constitute "an instance." This would apply to the

---

[13] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[14] *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) (thereafter referencing Merriam-Webster's Collegiate Dictionary for the plain meaning of a term).

wife of United States Supreme Court Justice Clarence Thomas, Virginia Thomas, requiring Justice Thomas' mandatory recusal under 28 U.S.C. § 455, which Plaintiff asserts herein to preserve for appeal.

39. Of the term "revolting," Merriam-Webster says "to renounce… subjection." Renounce is to "refuse to follow, obey, or recognize." Subjection is being "placed under authority." Thus, an insurrection include all stages of the event wherein at *at least one stage* there was a refusal to recognize the authority of an established governmental body, such as the United States Senate and its ceremonial reading of the certified election results and engaging in violence to undermine *both* that process and the United States Constitution.

40. Defendant Donald John Trump summoned the mob to our nation's Capitol, organized and assembled the mob, allowed weapons in the crowd by ordering security to let them pass, radicalized the mob with incendiary rhetoric, ordered them to march to the Capitol, refused to make public statements to denounce the violence and call off the mob for 187 minutes, and when it became clear that the mob had failed to use violence to prevent the certification of the election results, then and only then, did former President Donald J. Trump order the mob to go home, but not before saying "we love you" and calling the violent mob "very special" after they had violently attacked the United States Capitol. All of these instances were part of the overall January 6 Insurrection in which Donald J. Trump was directly and irrefutably involved.

41. Clause 1 of Section 3 of the 14th Amendment to the United States Constitution declares that anyone deemed to have engaged in insurrection are "enemies." However, less focus is given to the fact that Section 3 similarly disqualifies those who have given "aid or comfort" to insurrectionists.

42. "Aid or comfort may be given to an enemy by words of encouragement, or the

expression of an opinion, from one occupying an influential position."[15]

43. There is a distinction between domestic "aid or comfort" to insurrectionists and foreign "aid and comfort" to invaders. This was highlighted by President Andrew Johnson's comments to a New Hampshire delegation that "Treason is a crime and must be punished as a crime… It must not be excused as an unsuccessful rebellion."[16] It was later reasoned that if "insurrection and levying war was accepted as treason, hundreds of thousands of men, most of them youths, were guilty of the offense that carried a mandatory sentence of death by hanging."[17] "To the Congress, the old law was unworkable for the [Civil War]… [thus, on] July 31, 1861, Congress passed a law which provided that anyone found guilty of conspiracy to overthrow the United States Government or to interfere with the operation of its laws shall be guilty of a high crime."[18]

44. "The offenses for which exclusion from office is denounced are not merely engaging in insurrection… but the giving of aid or comfort to their enemies."[19] In that case, Judge Chase, whom himself was balancing his need for impartiality with his desire to pursue the Presidency, insinuated that the inclusion of the "aid or comfort" disqualifier in Section 3 of the 14th Amendment applied only in the context of a foreign invasion or war. Judge Chase was an abolitionist but still an ambitious and aspiring politician who considered campaigning for the Presidency and did not want to upset the South by declaring that the reference in Section 3 to "enemies" applied to the insurrectionists and rebels that fought for the Confederacy. Giving "aid and comfort" to foreign enemies was

---

[15] *McKee v. Young*, 2 Bart. El. Cas. 422 (1868).
[16] See J.G. Randall, *The Civil War and Reconstruction 707* (1937) (first omission in original).
[17] See Jonathan Truman Dorris, *Pardon and Amnesty Under Lincoln and Johnson – The Restoration of the Confederates to Their Rights and Privileges 1861-1898*, at 4 (1953).
[18] See C. Ellen Connally, *The Use of the Fourteenth Amendment by Salmon P. Chase in the Trial of Jefferson Davis*, 42 Akron L. Rev. 1165, 1165 (2009).
[19] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).

already covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States Constitution. Section 3 of the 14th Amendment, being a post-civil war amendment, was referring solely to *domestic* enemies that engaged in insurrection or rebellion against the United States and had previously given an oath to support the Constitution; thereby only targeting higher-level officials that are required to take oaths.

45. This is supported by the fact that the "final version of Section 3 reflected a refinement of the radicals' philosophy of formal equality. Opposition to the broader House proposal arose in part from the widespread view that many Confederate soldiers, even if not conscripted, had little real choice but to join the Southern cause. In that light, the final version of Section 3 was not less punitive so much as it was more targeted. Whereas the House version promised to affect the rank and file, the Senate version would reach only the senior leadership. Moreover, the Senate version was, in important ways, harsher than the House version. The House measure would have sunset in 1870 and applied only to federal elections. By contrast, the final version [of Section 3] permanently rendered virtually the entire political leadership of the South ineligible for office, both state and federal. The final version of Section 3 thus reflected a nuanced view: as compared with felons, Confederate officials were more deserving of punishment and Southern foot soldiers were less so."[20]

46. Every federal, state, and local public official that offered words of encouragement, show of sympathy, or expression of support for or defense of, the January 6 Insurrection must, pursuant to Section 3 of the 14th Amendment to the United States Constitution, be declared ineligible to hold any civil or military office in the United States at the federal, state, or local level.

---

[20] *See* Richard M. Re, Christopher M. Re, *Voting and Vice: Criminal Disenfranchisement and the Reconstruction Amendments*, 121 Yale L.J. 1584, 1622–23 (2012); *also see* Eric Foner, *Reconstruction: America's Unfinished Revolution 1863-1877*, at 259 (1988).

**Amendment XIV, Section 3, Clause 2**

47. Clause 2 of Section 3 of the 14th Amendment to the United States Constitution reads: "Congress may, by a vote of two-third of *each* House, remove such disability." (*Emphasis added*).

48. Plaintiff emphasizes the Constitution's use of the term "each" since there appears to be widespread misconception that only the U.S. House of Representatives is needed to remove the disqualifying disability, which stems from the 1868 case of *Butler*.[21] Therefore, if 290 members of the U.S. House of Representatives and 67 members of the U.S. Senate vote to remove the disqualifying disability, a person otherwise ineligible to hold office under Section 3 of the 14th Amendment could hold office. In today's political climate, this is impossible.

49. It is also critical to anticipatorily highlight that a Presidential pardon does not remove this disability since the United States Constitution provides that only Congress may lift the disability. This is contrary to an old, outdated, and clearly biased Attorney General Opinion from Southern Confederate Augustus Garland that attempted to limit its scope; it inexplicably ignored the term "each" and suggested a presidential pardon could remove the qualification disability notwithstanding the Constitution's clear and exclusive reservation and delegation of that power solely to Congress.[22]

**Scope of Amendment XIV**

50. The disqualification applies to both civil and military positions at both the federal and state level, which has been judicially determined to even include a local

---

[21] *See Butler*, 2 Bart. El. Cas. 461 (1868).
[22] *See Lawton's Case*, 18 Op.Atty.Gen. 149 (1885).

constable position.[23]

51.    "There can be no office which is not either legislative, judicial, or executive [covered by Section 3 of the 14th Amendment because]… it embraces every office… [and] it was passed to punish those high in authority… for their bad faith toward the government they had sworn [in their oath of office] to support."[24]

52.    "The amendment applies to all the states of the Union, to all offices under the United States or under any state, and to all persons in the category of prohibition, and for all time present and future."[25]  It is a lifetime ban from public office.

53.    As mentioned before, Section 3 of the 14th Amendment is merely an Anti-Insurrection Qualification Clause. It was not intended to be a punishment for someone who engaged in an insurrection or gave aid or comfort to insurrectionists any more than the Natural Born Citizen qualification clause is punitive. If you are not a natural born citizen of the United States, you cannot hold the Office of the Presidency. If you violated your oath of office by engaging in an insurrection, you cannot hold the Office of the Presidency. It's a mere qualification for the office.

### Enforcement of Amendment XIV

54.    In an attempt to neutralize Section 3 of the 14th Amendment, some commentators dating as far back as 1868 developed the legal theory that this provision of the United States Constitution was unenforceable without enabling legislation. Such a suggestion is legally baseless, patently frivolous, and wholly without merit.

55.    In fact, it was the President of the Confederacy, Jefferson Davis, who, in 1868,

---

[23] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[24] *Id.*
[25] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).

contended that Section 3 *was* self-executing and, therefore, barred his criminal trial for treason. *See Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment*, 36 Const. Comment. 87 (2021). Moreover, it was Judge Chase who agreed in Jefferson Davis' criminal trial that Section 3 was self-executing; thereby implicating the prohibition against Double Jeopardy.[26] Shortly thereafter, however, Justice Chase reversed his position and declared that Section 3 was not self-executing when a black criminal defendant challenged his conviction on the grounds that the judge presiding over his trial fought for the Confederacy and was, therefore, ineligible to preside over his trial rendering his guilty verdict null and void.[27] Following these irreconcilable rulings from a clearly biased Justice Chase who could not make up his mind, Congress decided to act on its own by enacting Section 3 enforcement statutes and, shortly thereafter, federal prosecutors began bringing actions to oust ineligible officials, including half of the Tennessee Supreme Court.[28] Congress' enactment of legislation was not an admission that Section 3 was not self-executing; it was to avoid the lunacy of a clearly biased, conflicted, and politically active Chief Justice that could not perform the functions of his office in a neutral, intellectual, fair, and impartial manner.

56.     In 1871, Amos Powell was indicted, via an enabling statute making it a *crime* to knowingly violate Section 3 of the 14th Amendment, "for accepting the office of sheriff when disqualified from holding office by the 14th Amendment… [and the] indictment charged that the defendant knowingly accepted office under the state of North

---

[26] *See Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) (describing Davis' argument and the Government's response); *Id.* at 102 (noting the Chief Justice's view).
[27] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815).
[28] *See Act of May 31*, 1870 (First Ku Klux Klan Act), ch. 114, § 14, 16 Stat. 140, 143; id. at § 15 (imposing criminal penalties for knowing Section Three violations); Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn B.J. 20 (2013).

Carolina, to which he was ineligible under the provisions of the 3d section of the 14th Amendment."[29]  In other words, to attach criminal penalties, enabling legislation is absolutely required since Section 3 of the 14th Amendment makes no reference to criminal penalties.

57.     Congress has jurisdiction to expel or exclude its own members that it determines have violated Section 3 of the 14th Amendment.[30]  However, it is unclear whether Congress can unilaterally impose said disability on the Executive Branch since that could be deemed an encroachment on a separate branch of the federal government. Nevertheless, a Congressional finding of liability would certainly aid the judiciary's fact-finding mission.

58.     Historically, the neutral finder of fact and arbiter of law has been the judiciary. Consistent with our principles of federalism and separation of powers, it is more likely that the judiciary and, in particular, the United States Supreme Court would be the only authority that the drafters of Section 3 could have possibly envisioned as being the most competent and legitimate body to determine whether an individual is ineligible under the Anti-Insurrection Qualification Clause.

                                                            Respectfully submitted,

September 1, 2023.                    By       /s/John Anthony Castro
                                                            JOHN ANTHONY CASTRO
                                                            12 Park Place
                                                            Mansfield, TX 76063
                                                            Tel. (202) 594 - 4344
                                                            J.Castro@JohnCastro.com
                                                            **PLAINTIFF *PRO SE***

---

[29] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[30] *See Powell v. McCormack*, 395 U.S. 486 (1969).

## **VERIFICATION**

I, John Anthony Castro, declare as follows:

1. I am the plaintiff in the present case, a U.S. citizen, and an FEC-registered Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election.

2. I intend to either appear on the 2024 Republican primary ballot in this state or to file documentation to be a formally recognized write-in candidate in both the primary and general elections. As such, I will maintain "standing" throughout the course of this litigation.

3. I have personal first-hand knowledge of all of the factual matters set forth in this document, and, if called upon to testify or give oral arguments, I would competently do so.

4. Pursuant to 28 U.S.C. § 1746 and state, I verify under penalty of perjury that the entirety of the foregoing document is true and correct.

Executed on September 1, 2023.

/s/ John Anthony Castro
John Anthony Castro



USPS ADULT SIG 21 OR OLDER

9472 4112 0620 3050 0074 14

**SHIP TO:**
U.S. District Court Clerk
333 Las Vegas Blvd S
Las Vegas NV 89101-7065

SIGNATURE REQUIRED

John Castro
Castro & Co.
13155 Noel Road, Suite 900
Dallas TX 75240-6882
(202) 594-4344

0007

**PRIORITY MAIL EXPRESS 1-DAY™**

09/01/2023
stamps
endicia
ComBasPrice

E

US POSTAGE & FEES PAID
PRIORITY MAIL EXPRESS
ZONE 6 FLAT-RATE ENVELOPE
FROM 75240
9800532
0625001495050

FILED
RECEIVED
SERVED ON
AGENT/PARTIES OF RECORD
SEP 05 2023
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
DEPUTY

PRESS FIRMLY TO SEAL

X-RAYED U.S. MARSHALS SERVICE

175




UNITED STATES POSTAL SERVICE®
PRIORITY MAIL EXPRESS®

PRIORITY MAIL EXPRESS
FLAT RATE
POSTAGE REQUIRED

To schedule free Package Pickup, scan the QR code.
USPS.COM/PICKUP
PS10001000006

EP13F Oct 2018
OD: 12 1/2 x 9 1/2