**Marquis Aurbach**
Brian R. Hardy, Esq.
Nevada Bar No. 10068
Harry L. Arnold, Esq.
Nevada Bar No. 15866
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
bhardy@maclaw.com
harnold@maclaw.com
*Attorneys for Defendant Donald John Trump*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN ANTHONY CASTRO,<br><br>                Plaintiff,<br><br>    vs.<br><br>SECRETARY OF STATE FRANCISCO V. AGUILAR; NEVADA REPUBLICAN PARTY; DONALD JOHN TRUMP,<br><br>                Defendant. | Case Number:<br>2:23-cv-01387-RFB-BNW<br><br>**DEFENDANT DONALD JOHN TRUMP'S RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b) (ECF NO. 21)** |

Defendant Donald John Trump ("President Trump"), by and through the law firm of Marquis Aurbach, hereby submits his Renewed Motion to Dismiss Plaintiff John Anthony Castro ("Plaintiff" or "Castro")'s First Amended Complaint Pursuant to Fed. R. Civ. P. ("FRCP") 12(b) (the "Motion").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION & SUMMARY

Plaintiff's First Amended Complaint ("Complaint" or "ECF No. 21") seeks both declaratory and injunctive relief. As will be detailed extensively herein, this request for declaratory and injunctive relief is meritless, and there are various avenues for this Court to dismiss the Complaint in its entirety, whether that be under FRCP 12(b)(1), FRCP 12(b)(5) or FRCP 12(b)(6). At the threshold, President Trump has not been properly served with process, and on this basis alone, Plaintiff's Complaint should be dismissed. Yet the glaring procedural deficiencies with Plaintiff's Complaint do not stop at insufficient service of process. Indeed, before even considering the substance of Plaintiff's claim—of which there is little—this

MAC:17466-001 5248045_3.docx

Court, for an assortment of reasons as detailed herein, should also dismiss for lack of subject-matter jurisdiction. Even if this Court had subject-matter jurisdiction, it should dismiss Plaintiff's Complaint because Plaintiff has not stated a claim upon which relief can be granted.

## II.    LEGAL STANDARDS

### A.    DISMISSAL UNDER FRCP 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *See Pinkney v. Am. Med. Response*, Inc., No. 208CV01257RLHGWF, 2009 WL 10693602, at *2 (D. Nev. Aug. 7, 2009) (citation, quotation omitted). Service of process is such a threshold issue that "[f]ederal district courts may decide motions to dismiss for insufficient service of process without a hearing." *See id.* Importantly, "[t]he party asserting jurisdiction [in this case, Plaintiff]… must make a prima facie showing of proper service under the Federal Rules in order to survive [a Motion to Dismiss]." *See id.* "Under Federal Rules of Civil Procedure 12(b)(4) and (b)(5), a defendant can move to dismiss a case based on insufficient process and insufficient service of process…" *Christmas v. Mortg. Elec. Registration Sys., Inc*., No. 2:09-CV-01389-RLH, 2010 WL 2697050, at *1 (D. Nev. July 6, 2010). Service of process is not a procedural requirement that can be overlooked at the court's discretion, but instead "[t]he Rules governing manner of service require strict compliance." *See id.* at *2.

### B.    DISMISSAL UNDER FRCP 12(b)(1)

"Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress." *See Pajarillo v. Schuler-Hintz*, No. 222CV00664ARTBNW, 2023 WL 2137409, at *2 (D. Nev. Feb. 17, 2023). Just as plaintiffs bear the burden of proving valid service of process, plaintiffs also have the burden with respect to establishing subject matter jurisdiction. *See BWD Properties 2, LLC v. Franklin*, No. 2:06-CV-01499BESPAL, 2007 WL 2891483, at *2 (D. Nev. Sept. 28, 2007) ("Although the defendant is the moving party on a motion to dismiss, it is the plaintiff who, as the party seeking to invoke the court's jurisdiction, bears the burden of establishing subject matter jurisdiction."). Indeed, a federal court "in effect presumes that it lacks jurisdiction until

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   the plaintiff proves otherwise." *See id.* Finally, and of considerable relevance here, "a federal

2   court lacks subject matter jurisdiction to consider claims that are 'so insubstantial,

3   implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of

4   merit as not to involve a federal controversy.'" *See Pajarillo*, at *4.

5     **C. DISMISSAL UNDER FRCP 12(b)(6)**

6     A court may dismiss a plaintiff's complaint for failing to state a claim upon which

7   relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a

8   ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th

9   Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff

10  cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See*

11  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). While the standard under Rule 12(b)(6)

12  does not require detailed factual allegations, a plaintiff must provide more than mere labels

13  and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic

14  recitation of the elements of a cause of action is insufficient. *Id.* A complaint should be

15  dismissed as a matter of law in the absence of a cognizable legal theory showing a basis for

16  relief. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

17  **III. LEGAL ARGUMENT**

18    **A. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR
    INSUFFICIENT SERVICE OF PROCESS UNDER FRCP 12(b)(5)**

19

20    Under FRCP 4, a plaintiff can effectuate service of process by either (1) following the

21  state law for service of process for either the state where service is made, or where the district

22  court is located, or (2) effectuate service via any of the three methods set forth in FRCP(e)(2).

23  *See* FRCP(e).

24    Plaintiff has filed a purported "Proof of Service" for President Trump (ECF No. 7) that

25  not only is devoid of proof that service of process has been effectuated, but actually concedes

26

27

28

it has not.[1] The Proof of Service shows on its face that someone named Celeste Doidge "personally mailed both the Summons and the Verified Complaint to Defendant Donald John Trump's personal residence…via Certified Mail Return Receipt Requested." *Id.* The Proof of Service further indicates that Ms. Doidge "contracted with a service processor in the State of Florida *who was unable to complete service of process* on Defendant John Trump." *See id.* (emphasis added). Respectfully, this Court need look no further than Plaintiff's own filed Proof of Service (ECF No. 7), and the admission therein that no service of process has been effectuated, in order to dismiss the Complaint under FRCP 12(b)(5).

Plaintiff hails from the state of Texas, which permits service via certified mail. But President Trump is not a resident of Texas, service was not effectuated in Texas, and this Court does not sit in Texas – meaning that service of process via certified mail in this case is not permissible under FRCP 4(e)(1). Nevada, the state in which this Court sits, sets forth the permissible methods for service upon individuals in its Rules of Civil Procedure, specifically Rule 4.2(a). And nowhere in Rule 4.2(a) is there any mention of certified mail constituting permissible service. To the extent that Plaintiff believes (wrongly) he has effectuated service in the state of Florida by mailing the summons and complaint via certified mail to President Trump's purported Florida address, it should be noted that Florida's applicable statute on service of process does not allow for such a method of service. *See generally*, Fla. Stat. Ann. § 48.031 (West).

**B. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURSIDICDICTION UNDER FRCP 12(b)(1)**

Even if proper service had been made—and it hasn't, this Court should dismiss pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction for four independent reasons: (1) political question doctrine, (2) the non-self-executing nature of the Fourteenth Amendment, (3) lack of standing, and (4) mootness.

---

[1] Plaintiff also filed a second Proof of Service for President Trump (ECF No.20), but said proof of service is file stamped with a Southern District of West Virginia stamp in the top right. Clearly Plaintiff is getting all of his different lawsuits mixed up, and ECF No. 20 can be summarily disregarded.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17466-001 5248045_3.docx

1.    **Plaintiff's Complaint Presents a Nonjusticiable Political Question**

Our Constitution commits to Congress and the Electoral College exclusive power to determine presidential qualifications and whether a candidate can serve as President. Courts cannot decide the issue at the heart of this case. Federal and state courts presented with similar cases challenging the qualifications of presidential candidates have uniformly held that they present nonjusticiable political questions reserved for those entities. This Court should do likewise.

Political questions are nonjusticiable and are therefore not cases or controversies. *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). The United States Supreme Court set out broad categories that should be considered nonjusticiable political questions in *Baker v. Carr*, 369 U.S. 186, 217 (1962):

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] a lack of judicially discoverable and manageable standards for resolving it; [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] an unusual need for unquestioning adherence to a political decision already made; [and 6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Numerous courts have held that similar challenges to the qualifications of presidential candidates present nonjusticiable political questions. A spate of lawsuits were filed surrounding the 2008 and 2012 General Elections, either asking state elections officials to ensure the qualifications of Barack Obama and/or John McCain, or challenging their qualifications outright. The Third Circuit, in an order issued during one such challenge, stated that this was a political question not within the province of the judiciary. *See Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009) (noting "Berg's apparent lack of standing and also stating that Berg's lawsuit seemed to present a non-justiciable political question."). Multiple district

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

courts also ruled that lawsuits challenging presidential qualifications presented nonjusticiable

political questions. For example, in *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal.

2008), a case brought before the 2008 election seeking to remove Senator McCain from the

California ballot on grounds that he did not qualify as a "natural-born citizen" within the

meaning of Article II of the Constitution, Judge Alsup explained why, even if the plaintiff's

lack of standing could be cured, the case was due to be dismissed in its entirety:

> It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C.
> § 15 for any challenge to any candidate to be ventilated when electoral votes
> are counted, and that the Twentieth Amendment provides guidance regarding
> how to proceed if a president elect shall have failed to qualify. Issues regarding
> qualifications for president are quintessentially suited to the foregoing process.
> Arguments concerning qualifications or lack thereof can be laid before the
> voting public before the election and, once the election is over, can be raised
> as objections as the electoral votes are counted in Congress. The members of
> the Senate and the House of Representatives are well qualified to adjudicate
> any objections to ballots for allegedly unqualified candidates. Therefore, this
> order holds that the challenge presented by plaintiff is committed under the
> Constitution to the electors and the legislative branch, at least in the first
> instance. Judicial review—if any—should occur only after the electoral and
> Congressional processes have run their course.
> *Id.* at 1147.

The opinion in *Grinols v. Electoral College*, No. 2:12–cv–02997–MCE–DAD, 2013

WL 2294885, at *5-7 (E.D. Cal. May 23, 2013)[2] is also highly instructive. *Grinols* dismissed

a challenge to President Obama's qualifications as a "natural-born citizen" after finding it

presented a nonjusticiable political question and violated the separation of powers because the

Constitution expressly entrusted the issue of presidential qualifications and removal from

office to the legislative branch.[3] Plaintiff will undoubtedly attempt to distinguish this opinion

---

[2] Stating that "the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer."

[3] So, too, did *Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 n.5 (D.N.J. 2009) (rejecting challenge to President Obama's qualifications because, among other things, the claim was "barred under the 'political question doctrine' as a question demonstrably committed to a coordinate political department."). The court

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

on grounds that it dealt with a plaintiff seeking removal of a sitting president from office, rather than a challenge to the election of a supposedly disqualified president. But an earlier opinion in *Grinols* refused to grant a temporary restraining order to prevent President Obama's 2012 re-election on the same "birther" theory because "numerous articles and amendments of the Constitution together make clear that the issue of the President's qualifications and his removal from office are textually committed to the legislative branch, and not the Courts." *Grinols v. Electoral Coll.*, No. 12-CV-02997-MCE-DAD, 2013 WL 211135, at *4 (E.D. Cal. Jan. 16, 2013). As a result:

> These various articles and amendments of the Constitution make it clear that the Constitution assigns to Congress, and not the Courts, the responsibility of determining whether a person is qualified to serve as President. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer. If the Court were to answer that question, the Court would "[interfere] in a political matter that is principally within the dominion of another branch of government." This Court, or any other federal court, cannot reach a decision on the merits of a political question because doing so would ignore the Constitutional limits imposed on the courts. Accordingly, Plaintiffs ask the Court to answer a question the Constitution bars the Court from answering.
> *Id.* (citation omitted).

Similarly, in *Taitz v. Democrat Party of Mississippi*, No. 3:12-CV-280-HTW-LRA, 2015 WL 11017373 (S.D. Miss. Mar. 31, 2015), another case that sought to have a candidate (President Obama) barred from the 2012 ballot based on the claim that he was not a "natural-born citizen," Judge Wingate's thorough opinion carefully analyzed the application of the political question and related separation of powers doctrines to such challenges. *Id.* at *12-16. Observing that the Twelfth and Twentieth Amendments charged the legislative branch with responsibility for the presidential electoral and qualification process ("[t]hese prerogatives are

---

observed that "[t]he Constitution commits the selection of the President to the Electoral College in Article II, Section 1, as amended by the Twelfth Amendment and the Twentieth Amendment, Section 3" and that "[n]one of these provisions evince an intention for judicial reviewability of these political choices." *Id.*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17466-001 5248045_3.docx

firmly committed to the legislative branch of our government"), *Taitz* held that "these matters are entrusted to the care of the United States Congress, not this court" and that the plaintiffs' disqualification claims were therefore nonjusticiable. *Id.*

Multiple state courts have also held that secretaries of state had no such power to disqualify a presidential candidate from a ballot because of the doctrine of separation of powers. For example, in *Strunk v. New York State Bd. Of Elections*, No. 6500/11, 2012 WL 1205117 (Sup. Ct. Kings County NY Apr. 11, 2012), the court found the Secretary of State did not have the authority to check qualifications because that authority presented a political question and a separation of powers issue. The court stated:

> If a state court were to involve itself in the eligibility of a candidate to hold the office of President, a determination reserved for the Electoral College and Congress, it may involve itself in national political matters for which it is institutionally ill-suited and interfere with the constitutional authority of the Electoral College and Congress.
> *Id.* at *12.

The California Court of Appeals' analysis in *Keyes v. Bowen*, 189 Cal.App.4th 647, 660 (2010), is also instructive:

> In any event, the truly absurd result would be to require each state's election official to investigate and determine whether the proffered candidate met eligibility criteria of the United States Constitution, giving each the power to override a party's selection of a presidential candidate. The presidential nominating process is not subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results. Were the courts of 50 states at liberty to issue injunctions restricting certification of duly-elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines. Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain and resolve the validity of objections following the submission of the electoral votes.

*See id.*; *accord, e.g., Jordan v. Secretary of State Sam Reed,* No. 12-2-01763-5, 2012 WL 4739216, at *1 (Wash. Super. Aug. 29, 2012) (rejecting birther claims seeking to exclude

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

President Obama from the Washington ballot; "I conclude that this court lacks subject matter jurisdiction. The primacy of congress to resolve issues of a candidate's qualifications to serve as president is established in the U.S. Constitution….")

Thus, it is well-settled law that the Constitution vests responsibility for determining whether a presidential candidate is qualified in the *federal* legislative branch—and only in the *federal* legislative branch—and that the courts are barred from encroaching on duties exclusively reserved for the federal legislature. As numerous courts have held, this fact alone is sufficient ground for concluding that legal challenges such as the one currently before this Court must be dismissed pursuant to the political question doctrine and related concepts of separation of powers. Overall, this Court would be on solid legal footing in continuing the longstanding American legal tradition of refusing to encroach on exclusively legislative prerogatives.

### 2. Section Three is Not Self-Executing When Used Offensively, and Requires Enforcement Mechanisms from Congress

Even if the political question doctrine did not bar consideration of this case, it would still be patently improper. Indeed, Section Three of the Fourteenth Amendment is not self-executing, and cannot be applied to support a cause of action seeking judicial relief absent Congressional enactment of a statute authorizing said plaintiff to bring such a cause of action. A recent article by scholars Joshua Blackman and Seth Barrett Tillman summarizes the question of whether Section Three is self-executing as follows:

> In our American constitutional tradition there are two distinct senses of self-execution. First, as a shield—or a defense. And second, as a sword—or a theory of liability or cause of action supporting affirmative relief. The former is customarily asserted as a defense in an action brought by others; the latter is asserted offensively by an applicant seeking affirmative relief.

> For example, when the government sues or prosecutes a person, the defendant can argue that the Constitution prohibits the government's action. In other words, the Constitution is raised defensively. In this first sense, the

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Constitution does not require any further legislation or action by Congress. In these circumstances, the Constitution is, as Baude and Paulsen write, self-executing.

In the second sense, the Constitution is used offensively–as a cause of action supporting affirmative relief. For example, a person goes to court, and sues the government or its officers for damages in relation to a breach of contract or in response to a constitutional tort committed by government actors. As a general matter, to sue the federal government or its officers, a private individual litigant must invoke a federal statutory cause of action. It is not enough to merely allege some unconstitutional state action in the abstract. Section 1983, including its statutory antecedents, *i.e.*, Second Enforcement Act a/k/a Ku Klux Klan Act of 1871, is the primary modern statute that private individuals use to vindicate constitutional rights when suing state government officers.

Constitutional provisions are not automatically self-executing when used offensively by an applicant seeking affirmative relief. Nor is there any presumption that constitutional provisions are self-executing.[4]

Blackman and Tillman then proceed to thoroughly and comprehensively analyze whether Section Three is self-executing and explain at length why it is not.[5]

Among the arguments they analyze is the historical treatment of the issue by, among others, Chief Justice Chase, and the Congress of 1870, just two years after the 1868 ratification of the Fourteenth Amendment. One year after ratification, the Chief Justice of the Supreme Court of the United States, in a circuit court case, ruled that Section Three was not self-executing and that it could only be enforced through specific procedures prescribed by Congress or the United States Constitution. *See In re Griffin*, 11 F.Cas. 7 (C.C.Va 1869). Otherwise, if anyone had tried it at that time, it would have created an immediate and intractable national crisis. There is no contemporaneous record of any outcry or protest about this holding. Instead, Congress almost immediately provided the legislation suggested by the

---

[4] Blackman and Tillman, *Sweeping and Forcing the President Into Section 3: A Response to William Baude and Michael Stokes Paulsen*, at 13-14, last accessed September 30, 2023, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4568771 (emphasis in original; internal footnote omitted).

[5] *See generally id.*

MAC:17466-001 5248045_3.docx

Chief Justice.

In 1870, Congress passed a law, entitled the "Enforcement Act," which allowed federal district attorneys to enforce Section Three. But the Enforcement Act did not give *state* election officials the authority to enforce the Fourteenth Amendment; it gave *federal* district attorneys that authority. Section 3 of the Enforcement Act allowed U.S. district attorneys to seek writs of *quo warranto* from federal courts to remove from office people who were disqualified by Section Three. Section 14 of the Enforcement Act required the courts to hear such proceedings before "all other cases on the docket." Section 15 provided for separate criminal trials of people who took office in violation of Section Three to take place in the federal courts.

Federal prosecutors immediately started exercising *quo warranto* authority, bringing actions pursuant to that ability. These actions, however, waned after a few years. *See* Amnesty Act of 1872 (removing most disqualifications in the manner provided by Section Three; Pres. Grant Proclamation 208 (suspending *quo warranto* prosecutions)). The Amnesty Act of 1898 completely removed all Section Three disabilities incurred to that date.

At this time, there is no implementing legislation that executes Section Three.  The original Enforcement Act was codified as 13 Judiciary ch. 3, sec. 563 and later recodified into 28 Judicial Code 41 — but in 1948, Congress repealed 28 USC 41 in its entirety. *See* Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 993; see also Act of June 25, 1948, ch. 645, § 2383, 62 Stat. 683, 808.. In 2021, legislation was introduced to provide a cause of action to remove individuals from office who were engaged in insurrection or rebellion, but no further action was taken on that bill. *See* H.R. 1405, 117th Cong. 2021. Thus, there is presently no statute authorizing any person to bring actions seeking disqualifications under Section Three of the Fourteenth Amendment. Chief Justice Chase's order and the subsequent legislative history

MAC:17466-001 5248045_3.docx

shows that Section Three is not self-executing unless Congress takes action to make it so and that it does not give secretaries of state the authority to remove a presidential candidate from the ballot. Creating a 51-jurisdiction patchwork of state election laws to enforce Section Three would simply fly in the face of this precedent and constitutional tradition, causing the exact crisis Justice Chase feared.

**3.      Plaintiff Lacks Standing to Bring the Instant Cause of Action**

The U.S. Constitution limits the judicial power of federal courts to actual cases and controversies. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), as revised (May 24, 2016) ("[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (citation and quotation omitted).[6]

Plaintiff's allegation of an intangible injury fails to meet each of the injury, causation, and redressability triad factors required to establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992); *see also California Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1049 (9th Cir. 2023).  First, he fails to allege an injury that is sufficiently individual and particularized *to him* to confer standing. Plaintiff claims only to suffer a competitive harm because he purportedly must compete with President Trump (in actuality they will not be in competition with each other, as Trump is participating in the party-run caucus, while Plaintiff is seemingly participating in the separate, state-run primary). But he fails to plausibly allege that this injures him in any particularized or concrete fashion. He has not identified a single voter who identifies Castro as his or her "second choice" after Donald Trump. And he has

---

[6] *See also Hybe Co. v. Does 1-100*, 598 F. Supp. 3d 1005, 1007 (D. Nev. 2022) ("The judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'") (citation and quotation omitted).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17466-001 5248045_3.docx

proffered no expert or social science evidence[7] that could support the inherently improbable claim that there is a latent Castro movement that would surface, if only Trump was not on the ballot. Ultimately, he alleges only the same, generalized injury as anyone else, and that is insufficient to confer standing.

Second, Plaintiff also fails to allege facts sufficient to establish that it is President Trump, as opposed to other factors, that is causing his asserted injury. Castro claims to be a candidate in the Nevada presidential preference primary. Plaintiff makes no claim–let alone a *plausible* claim–that preventing the secretary of state from including President Trump on the primary ballot materially reduces *his* chances of winning the primary and being awarded Nevada's delegates to the Republican National Convention. Nor could he, given that the delegates are not being awarded based on the results of the primary. The truth is, of course, that no one has ever heard of Mr. Castro and, even if one were to assume that President Trump was not on the ballot, there is absolutely no reason to suppose that any meaningful number of votes would go to him, as opposed to candidates who are actually recognized in the polls and on the streets. Absent any such plausible factual allegation, he has not met his obligation to show a causal relationship between President Trump being on the ballot and his inevitable failure to win the Nevada primary. And to reiterate, such analysis is essentially an academic legal exercise, as President Trump is not even participating in the primary that Castro claims he needs judicial relief to block his access to.

Finally, any injury to the Plaintiff caused by the inclusion of President Trump on the ballot is not redressable by this Court. The removal of President Trump from the Nevada ballot

---

[7] As recently as May of this year, the Ninth Circuit has suggested that in the context of a preliminary injunction, and when dealing with "highly technical" subject matter, expert testimony may be necessary to guide the district court's analysis. See *Lorador v. Kolev*, No. 22-15491, 2023 WL 3477834, at *1-2 (9th Cir. May 16, 2023).

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

would not result in Mr. Castro winning even a single delegate in this State. Certainly, he has not alleged—much less proven—any plausible mechanism by which it would.

Plaintiff's claim that he has "competitive injury" standing is misplaced. Generally, cases finding competitive standing in the election law context have been brought by political parties seeking to exclude competing parties and candidates from the general election ballot. *See*, *e.g.*, *Texas Dem. Party v. Benkiser*, 459 F.3d 582, 586-87 n.4 (5th Cir.2006); *Schulz v. Williams,* 44 F.3d 48, 53 (2nd Cir.1994); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir.1990). But Plaintiff has identified no instance in which competitive injury standing has been extended to a political party's primary election, where the question is not who will win a public office, but rather who will be that party's nominee. Nor has he cited a case in which competitive standing was established in a contest to elect delegates to a national political convention. And certainly, neither Congress nor common law or history support such a proposition.

Nor, in this instance, does common sense. Even if Plaintiff's status as a putative "competitor" serves to distinguish him in some measure from those whose generalized claim to standing derives merely from their status as voters, it does not remedy the standing defects posed by the sheer implausibility—unleavened by any measure of reality—of Plaintiff's claims of injury, causation, and redressability. Plaintiff lacks standing.

### 4. Plaintiff's Complaint, to the Extent it was Ever Valid, Is Moot

Plaintiff's Complaint ignores basic, undeniable facts about Nevada election law and procedure, and rests entirely on impermissible speculation. Plaintiff's Complaint conspicuously makes no reference to Nevada-specific election law whatsoever, which should not come as a surprise since Plaintiff has endeavored to recycle the same generic template for relief in federal courts throughout the country. Had Plaintiff done basic due diligence prior to filing suit, he would have seen that the Nevada Republican Party has publicly announced that

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

it is not utilizing the state-run primary (which is non-binding) set forth in NRS 298 *et seq.* for awarding delegates to the national convention, and that any candidate who participates in the state-run primary will be ineligible to be awarded any delegates.[8] The Nevada Republican Party is instead using a party-run caucus to award delegates. The Nevada Secretary of State plays no role whatsoever in a Republican Party caucus. And President Trump has already affirmed his participation in the caucus rather than the primary,[9] meaning Plaintiff's lawsuit is effectively seeking to deny President Trump ballot access to a primary he will not even be participating in – the epitome of mootness.[10]

It is well-settled that where a case is moot it is "no longer a 'Case' or 'Controversy' for purposes of Article III…."  *Already, LLC v. Nike, Inc.* 568 U.S. 85, 91 (2013).

### C.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FRCP 12(b)(6)

#### 1.   Section Three of the Fourteenth Amendment Does Not Apply to President Trump

This Court should cease entertaining this action because President Trump is not subject to Section Three. Section Three states:

No person shall be a Senator or Representative in Congress, or elector of

---

[8] Nevada Republican Party, *PRESS RELEASE: Nevada Republicans Will Conduct First in the West Caucus on February 8, 2024, With Voter ID, Paper Ballots, And Results Released the Same Night*, https://nevadagop.org/press-release-nevada-republicans-will-conduct-first-in-the-west-caucus-on-february-8-2024-with-voter-id-paper-ballots-and-results-released-the-same-night/ (last accessed October 1, 2023); *see O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").

[9] Gabe Stern, *Donald Trump commits to Nevada caucus as state GOP approves rules rivals see as helping his campaign*, ASSOCIATED PRESS (Sept. 23, 2023), https://apnews.com/article/nevada-gop-donald-trump-caucus-066ce2bc1a272650d944c61f1d73cdc2.

[10] Plaintiff's First Amended Complaint nonchalantly seeks to address this glaring issue of mootness by adding in the Nevada Republican Party ("NV GOP") as an additional defendant, and requesting that the NV GOP be enjoined from holding a caucus in lieu of a primary. Yet Plaintiff offers no plausible basis for this assertion, beyond making the vague, unexplained and frankly throwaway allegation that the NV GOP choosing to hold a caucus in lieu of a primary is somehow violative of 18 U.S.C. § 16 and 42 U.S.C. § 1983. *See* ECF No. 21 at pg. 11, ¶ 16, 18.  This is a frivolous and quite frankly ridiculous "Hail Mary" attempt to downplay the mootness of the instant action.

MAC:17466-001 5248045_3.docx

President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3

First, by its plain terms, Section Three does not explicitly include the President. Section Three specifically references several officials, including members of Congress and members of any State legislature. It does not specifically mention the President. Pursuant to the semantic canon of statutory interpretation *expressio unius est exclusion alterius*, the "expression of one thing implies the exclusion of others" not mentioned. Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012). Since the President is not mentioned, basic canons of statutory interpretation counsel that the President is not included with the scope of Section Three.

To avoid this conclusion, some have looked to the phrase "officers of the United States" as a catch-all to include the President. This argument is unavailing. As that term was used in Section Three, it did not cover the President. Furthermore, Section Three can disqualify someone only if his oath was "to support the Constitution of the United States." *Id.* As explained later, that is not the oath that President Trump took.

The phrase "Officers of the United States," as used in the Constitution of 1788, does not refer to elected positions. *See* Josh Blackman & Seth Barrett Tillman, *Is the President an "Officer of the United States" for Purposes of Section 3 of the Fourteenth Amendment?*, 15(1) N.Y.U. J.L. & LIBERTY 1 (2021). *That* meaning had not changed by 1868, when the Fourteenth Amendment was ratified. *Id.* In fact, as Blackman and Tillman explain in their later 2023 article:

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Our 2021 article cites several sources from the period roughly contemporaneous with ratification to support the position that the President is not an Officer of the United States. For example, we wrote:

In 1876, the House of Representatives impeached Secretary of War William Belknap. During the trial, Senator Newton Booth from California observed, "the President is not an officer of the United States." Instead, Booth stated, the President is "part of the Government." Two years later, David McKnight wrote an influential treatise on the American electoral system. He reached a similar conclusion. McKnight wrote that "[i]t is obvious that . . . the President is not regarded as 'an officer of, or under, the United States,' but as one branch of 'the Government.'

Blackman and Tillman, *supra* at 112. They continue:

First, presidents fall under the scope of the Impeachment Clause precisely because there is express language in the clause providing for presidential impeachments; the Impeachment Clause does not rely on general "office"- or "officer"-language to make presidents impeachable. We think this is the common convention with regard to drafting constitutional provisions. When a proscription is meant to control elected positions, those positions are expressly named, as opposed to relying on general "office"- and "officer"-language. Congress does not hide the Commander in Chief in mouseholes or even foxholes. For example, in 1969, future-Chief Justice William H. Rehnquist, then an Executive Branch attorney, addressed this sort of clear-statement principle. Statutes that refer to "officers of the United States," he wrote, generally "are construed not to include the President unless there is a specific indication that Congress intended to cover the Chief Executive." Five years later, future-Justice Antonin Scalia, then also an Executive Branch attorney, reached a similar conclusion with regard to the Constitution's "office"-language. These Executive Branch precedents would counsel against deeming the President an "officer of the United States."

Second, as to the Appointments Clause, which uses "Officers of the United States"-language, Presidents do not appoint themselves or their successors. The Supreme Court hears a never-ending stream of cases that ask if a particular position is a principal or inferior officer of the United States—even though the Appointments Clause does not even distinguish between those two types of positions. Where has the Court ever suggested that the President falls in the ambit of the Appointments Clause's "Officers of the United States"-language?

To the contrary, the Court has asserted just the opposite. In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, Chief Justice Roberts observed that "[t]he people do not vote for the 'Officers of the United States.'" Rather, the Appointments Clause requires appointment of these individuals. Chief Justice Roberts reaffirmed this position in *Seila Law LLC v. CFPB*. He wrote, "Article II distinguishes between two kinds of officers—principal officers (who must be appointed by the President with the advice and consent

of the Senate) and inferior officers (whose appointment Congress may vest in the President, courts, or heads of Departments)." Both categories of positions are appointed.

And, finally, as to the Commissions Clause, which also uses "Officers of the United States"-language, Presidents do not commission themselves, their vice presidents, their successor presidents, or successor vice presidents.

*Id*. at 116-117. Blackman and Tillman write further about the clauses in Section Three:

The second clause does not expressly list several categories of positions: *e.g.*, presidential electors, appointed officers of state legislatures, members of state constitutional conventions, and state militia officers. The first clause does not expressly list several categories of positions: *e.g.*, members of the state legislatures, and members of state constitutional conventions. Neither list expressly mentions the President and Vice President.

*Id*. at 126.

Even if this Court were to determine that President Trump was an officer of the United States, Section Three does not, by its terms, apply to all officers of the United States, but rather only to those who have taken "previously taken an oath . . . to support the Constitution of the United States." President Trump did not take the specified oath; instead, the oath President Trump took is that mandated by Article II, Clause Eight of the United States Constitution. That oath states:

Before he enter on the Execution of his Office, he shall take the following Oath or Affirmation:– I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and *will to the best of my Ability, preserve, protect and defend the Constitution of the United States.*
U.S. CONST., art. II, cl. 8 (emphasis added).

The words used in the presidential oath differ from those in the oaths other members of the federal and state governments take:

The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, *to support this Constitution . . . .*
*Id*. at art. VI, cl. 3 (emphasis added).

As noted, Section Three contains the same emphasized phrase:

Page 18 of 25

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

> No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any state, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, *to support the Constitution of the United States* . . .
> U.S. CONST. amend. XIV, § 3.

Thus, the Constitution requires members of Congress and those appointed to offices under the United States to take an oath to "support" the Constitution, but it requires the President to take an oath to "preserve, protect and defend" the Constitution. This is significant for two reasons. First, it is further evidence that the President was not understood or intended by the drafters of the Fourteenth Amendment to be an Officer of the United States. And second, because having "previously taken an oath . . . to *support* the Constitution of the United States" is a further limitation upon the class of persons subject to Section Three, it excludes President Trump—who never took such an oath—from that class of persons.

Section Three's second clause clearly limits Section Three's application to individuals who had previously taken a particular oath, namely the oath specified in Article VI. Both Section Three and Article VI reference the same groups of people, neither of which encompasses the President. It is therefore unlikely that Section Three would have been understood to apply to the President. The history of how the Constitution's Impeachment Clause was drafted further supports this conclusion. When said clause was drafted, it initially referred to the President, Vice President, and "other civil officers of the U.S." 2 The Records of the Federal Convention of 1787, at 545 and 552 (Farrand ed., 1911). But upon further deliberation, the drafters changed the Impeachment Clause to remove the word "other." *Id*. at 600. There would have been no reason to do that if the President were indeed an "officer of the United States."

If the Framers of the Constitution wanted the oath to be the same for the President of

MAC:17466-001 5248045_3.docx

the United States as it is for senators, representatives, state legislators, and executive and judicial officers, they would have so spoken. The words that they chose must be given their proper meaning and where they chose different phrases those phrases must be accorded different meanings.[11] And if the framers of Section Three wanted the President of the United States to be subject to disqualification, they would have so specified. Instead, they used a phrase—officer of the United States—understood not to include the President and further limited the scope of the provision to those officers who had taken the Article VI oath to "support" the Constitution. President Trump was not an officer of the United States and never took the Article VI oath. Section Three therefore does not apply to him.

### 2.   Even if Section Three Did Apply to President Trump, Plaintiff Has Not Alleged a Violation of Section Three

Plaintiff has not alleged—apart from bare conclusions—that President Trump has violated any provision of Section Three.  Nor can he.  Assuming Plaintiff's' pleadings to be true and construing all reasonable inferences in the light most favorable to him, the Complaint on its face does not assert a cause of action.  For one, it is matter of public record that Donald Trump was impeached by the 117th Congress for incitement of insurrection and that he was found not guilty of those charges by the Senate.  *See* Impeaching Donald John Trump, President of the United States, for high crimes and misdemeanors, H. 24, 117th Cong. (2021).[12]

Even if all the facts in the Complaint are true, rebellion or insurrection is a federal

---

[11] *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 4, 334, 4 L. Ed. 97 (1816) ("From this difference of phraseology, perhaps, a difference of constitutional intention may, with propriety, be inferred. It is hardly to be presumed that the variation in the language could have been accidental.")

[12] A true and correct copy of the Senate vote of Not Guilty can be found at https://www.senate.gov/legislative/LIS/roll_call_votes/vote1171/vote_117_1_00059.htm (last accessed October 4, 2023).

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

crime, and no court in the United States has found President Trump guilty of 18 U.S.C. § 2383. Furthermore, not a single prosecutor has filed an indictment against President Trump for rebellion or insurrection, much less obtained a conviction on such a charge.  Nor has a single prosecutor charged any of the 1,000+ people connected to the riot at the Capitol under 18 U.S.C. § 2383, the federal criminal statute that covers "insurrection."  *United States v. Griffith*, No. CR 21-244-2 (CKK), 2023 WL 2043223, at *6 fn. 5 (D.D.C. Feb. 16, 2023), (finding that "no defendant has been charged with [18 U.S.C. § 2383]").[13] Moreover, the elements that comprise disqualification under Section Three have not been met. This Court should thus dismiss this action for failure to state a claim upon which relief can be granted.

### a. "Insurrection or Rebellion" Under Section Three Requires Treasonous Warmaking

Section Three was modeled partly on the original Constitution's Treason Clause, and partly on the Second Confiscation Act, which Congress had enacted in 1862.  Section 2 of the Confiscation Act punished anyone who "shall hereafter incite, set on foot, assist, or engage in any rebellion or insurrection against the authority of the United States … or give aid or comfort thereto."  12 Stat. 589 & 627 (1862); *see* 18 U.S.C. § 2383.  Section Three, ratified six years later with the rest of the Fourteenth Amendment, similarly covers "insurrection or rebellion."   Unlike the Confiscation Act, however, Section Three omits any penalty for 'incit[ing] or "assist[ing]" an insurrection, and it penalizes only actually "engag[ing] in" insurrection.

The year after the Confiscation Act became law, Chief Justice Chase—an appointee of President Lincoln—construed these terms and held the Act prohibits only conduct that "amount[s] to treason within the meaning of the Constitution," not any lesser offense.  *United*

---

[13] *See also*, Alan Feuer, *More Than 1,000 People Have Been Charged in Connection with the Jan. 6 Attack*, THE NEW YORK TIMES (Aug. 1, 2023), https://www.nytimes.com/live/2023/08/01/us/trump-indictment-jan-6#more-than-1000-people-have-been-charged-in-connection-with-the-jan-6-attack.

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

*States v. Greathouse*, 26 F. Cas. 18, 21 (C.C.N.D. Cal. 1863).   Indeed, the Chief Justice concluded that not just any form of treason would do: he construed the Section 2 of the Act to cover only treason that "consist[ed] in engaging in or assisting a rebellion or insurrection." *Id.*  In the same case, another judge confirmed and clarified that, for these purposes, "engaging in a rebellion and giving it aid and comfort[] amounts to a levying of war," and that insurrection and treason involve "different penalt[ies]" but are "substantially the same."  *Id.* at 25 (Hoffman, J.).   Contemporary dictionaries confirmed this definition. John Bouvier's 1868 legal dictionary defined *insurrection* as a "rebellion of citizens or subjects of a country against its government," and *rebellion* as "taking up arms traitorously against the government."[14]

Congress's immediate post-ratification consideration of Section Three itself reflects the same understanding.  In 1870—just two years after the Fourteenth Amendment was ratified—Congress considered whether a Representative-elect from Kentucky was disqualified by Section Three when, before the Civil War began, he had voted in the Kentucky legislature in favor of a resolution to "resist [any] invasion of the soil of the South at all hazards." 41 Cong. Globe at 5443. The House found that this was not disqualifying.  *Id.* at 5447.  Similarly, in 1870 the House also considered the qualifications of a Representative-elect from Virginia who, before the Civil War, had voted in the Virginia House of Delegates for a resolution that Virginia should "unite" with "the slaveholding states" if "efforts to reconcile" with the North should fail, and stated in debate that Virginia should "if necessary, fight," but who after Virginia's actual secession "had been an outspoken Union man." *Hinds' Precedents of the House of Representatives of the United States*, 477 (1907).  The House found that this was not disqualifying under Section Three.  *Id.* at 477-78. By contrast, the House did

---

[14] *A Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union* (Philadelphia, G.W. Childs, 12th ed., rev. and enl. 1868).

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

disqualify a candidate who "had acted as colonel in the rebel army" and "as governor of the rebel State of North Carolina." *Id.* at 481, 486.

### b. "Aid or Comfort to the Enem[y]" Under Section Three Requires Assistance to a Foreign Power"

The fifth clause of Section Three disqualifies those who have "given aid or comfort to the enemies" of the "United States" or the "Constitution." In this regard, Section Three was not modeled on the Confiscation Act, which criminalized giving "aid or comfort" to a "rebellion or insurrection." Instead, Section Three replicates the language of the original Constitution's Treason Clause, Article III, Section Three, which defines treason as "adhering to [the United States'] Enemies, giving them Aid and Comfort."

It was well known that the "enemies" prong of the Treason Clause almost exactly replicated a British statute defining treason. *See* 4 Blackstone, *Commentaries on the Laws of England* 82 (1769). But "enemies," as used in that statute, referred only to "the subjects of foreign powers with whom we are at open war," not to "fellow subjects." *Id.* at 82-83. Blackstone was emphatic that "an enemy" was "always the subject of some foreign prince, and one who owes no allegiance to the crown of England." *Id.*

Blackstone's view was also the American view. Four years after the original Constitution was ratified, Justice Wilson explained that "enemies" are "the citizens or subjects of foreign princes or states, with whom the United States are at open war." 2 *Collected Works of James Wilson* 1355 (1791). The 1910 version of *Black's Law Dictionary* agrees, defining "enemy" as "either the nation which is at war with another, or a citizen or subject of such nation." At the outset of the Civil War, the Supreme Court had recognized that the Confederate states should be "treated as enemies," under a similar definition of that word, because of their "claim[] to be acknowledged by the world as a sovereign state," and because (although the United States did not recognize that claim) the Confederacy was *de facto* a foreign power that had "made war on" the United States. *See The Prize Cases*, 67 U.S. 635,

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

673-74 (1862).  So, it made sense for Section Three, enacted in response to the Civil War, to refer to support for the Confederacy as "aid and comfort to… enemies," defined as foreign powers in a state of war with the United States.

### c. These Definitions Make Clear That President Trumps' Alleged Conduct Does Not Come Within Section Three

These definitions make it even more obvious that President Trump's conduct before and on January 6, 2021, did not come within Section Three.  The same Representatives who voted for the Fourteenth Amendment understood that, under its terms, even strident and explicit pre-Civil-War advocacy for a future rebellion was not "engaging in insurrection" or providing "aid or comfort to the enem[y]."  By the same token, subtle or implicit advocacy for a future riot at (or even attack on) the Capitol could not qualify under Section Three, even if President Trump had in fact engaged in such advocacy. On top of that, "aid and comfort to the enem[y]" involves only assisting a foreign government (or its citizens or subjects) in making war against the United States.  Petitioners do not and could not allege that the January 6 attack involved any foreign power, or that the attackers constituted any sort of *de facto* foreign government.

## IV.   **CONCLUSION**

For all the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety, with prejudice, and the instant case closed.

Dated this 19th day of October, 2023.

MARQUIS AURBACH

By */s/ Brian R. Hardy, Esq.*
   Brian R. Hardy, Esq.
   Nevada Bar No. 10068
   Harry L. Arnold, Esq.
   Nevada Bar No. 15866
   10001 Park Run Drive
   Las Vegas, Nevada 89145
   *Attorney(s) for Defendant Donald John Trump*

MAC:17466-001 5248045_3.docx

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT DONALD JOHN TRUMP'S RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b) (ECF NO. 21)** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 19th day of October, 2023.

☒       I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

John Anthony Castro
12 Park Place
Mainsfield, TX 76063
j.castro@castroandco.com
*Pro Se Plaintiff*


Laena St-Jules, Esq.
Office of the Nevada Attorney General NV
2443 Sparstone Dr.
Reno, NV 89521
lstjules@ag.nv.gov
*Attorney(s) for Defendant*
*Secretary of State Francisco V. Aguilar*


/s/ Michelle Monkarsh
An employee of Marquis Aurbach

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17466-001 5248045_3.docx