AARON D. FORD
  Attorney General
LAENA ST-JULES (Bar No. 15156)
  Senior Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1265
E: lstjules@ag.nv.gov

*Attorneys for Defendant Secretary of State*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN ANTHONY CASTRO<br><br>Plaintiff,<br><br>vs.<br><br>SECRETARY OF STATE FRANCISCO V. AGUILAR; NEVADA REPUBLICAN PARTY; DONALD JOHN TRUMP<br><br>Defendants. | Case No. 2:23-cv-01387-GMN-BNW<br><br>**DEFENDANT SECRETARY OF STATE'S OPPOSITION TO EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND EXPEDITED PRELIMINARY INJUNCTION HEARING CONSOLIDATED WITH A PRELIMINARY BENCH TRIAL ON THE MERITS** |

Defendant Secretary of State Francisco V. Aguilar ("Secretary of State"), submits this Opposition to Plaintiff John Anthony Castro's Emergency Application for a Temporary Restraining Order and Expedited Preliminary Injunction Hearing Consolidated with a Preliminary Bench Trial on the Merits ("Emergency Application"), ECF No. 52.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Secretary of State does not take a position on Castro's argument that the Nevada Republican Party's forthcoming caucus is unlawful.  However, the Secretary of State opposes Castro's Emergency Application to the extent it requests that the Secretary of State be required to add candidates to the presidential preference primary ("PPP") ballot for the PPP election scheduled for February 6, 2024.  *See* Emergency Application, ECF No. 52 at 6.

/ / /

Ballot printing is underway in all of Nevada's counties, and ballots are already being sent out in compliance with federal and state law. Worse yet, votes for the 2024 PPP election have already been cast. The Court should decline Castro's invitation to force the Secretary of State to violate law. Castro's Emergency Application is also deficient because Castro failed to comply with the district's rules for emergency motions. Further, Castro has failed to join parties that would be impacted by his requests for relief, and he has failed to articulate any irreparable harm he would suffer absent an injunction or temporary restraining order. He is also seeking improperly to disrupt the status quo and bind individuals who cannot be bound by a preliminary injunction. The Court should deny Castro's Emergency Application.

## II.  BACKGROUND

### A.  This Lawsuit

On September 5, 2023, Castro initiated this lawsuit, Verified Complaint for Injunctive Relief, ECF No. 1, and on September 18, 2023 filed an Emergency Application for a Temporary Restraining Order and Expedited Preliminary Injunction Hearing Consolidated with a Preliminary Bench Trial on the Merits, ECF Nos. 9, 11. On October 2, 2023, the Secretary of State filed an opposition to that emergency application ("First Emergency Application Opposition"), ECF No. 13. In that opposition, the Secretary of State explained that Nevada law provides for a PPP election for major political parties, and that the Nevada Republican Party intended to use a party-run caucus instead to bind delegates to its nominating convention. *Id.* at 3. The Secretary of State further explained that the PPP election "is not binding and major political party presidential candidates are not required to participate to maintain ballot access for the general election." *Id.*

Castro was therefore on notice about the legal effect of the PPP election and the Nevada Republican Party's intention to use a caucus no later than October 2, 2023. Also on October 2, 2023, Castro filed a declaration of candidacy with the Secretary of State to participate in the 2024 PPP election. Ex. 1, Decl. of Mark Wlaschin ¶ 2. And Castro amended his complaint less than a week later, on October 8, 2023, to add the Nevada

Republican Party as a defendant and to allege that the Nevada Republican Party's forthcoming caucus was unlawful. Verified Complaint for Declaratory and Injunctive Relief ("FAC"), ECF No. 21.

### B. Legal Background Relating to the PPP Election

From the 1982 through 2020 presidential elections, with one exception in 1996, major political parties in Nevada used closed caucuses to determine delegates to their national conventions. *See* NRS 293.130-137 (repealed 2021); *see also* Nevada Secretary of State, Nevada Primary and Caucus History, https://www.nvsos.gov/sos/elections/election-information/about-elections/nevada-primary-and-caucus-history.

In 2021, the 81st Nevada Legislative Session adopted Assembly Bill 126, which established a process for major political party candidates to participate in a PPP election. This process is codified in NRS 298.600-720. The rules require a PPP election, paid for by the State, to be held on the first Tuesday in February of each presidential election year if two or more qualified candidates of a major political party file declarations of candidacy with the Secretary of State between October 1 and October 15[1] of the year preceding the PPP election. NRS 298.650-660; NRS 298.710. If no qualified candidate or only one qualified candidate from a major political party files a declaration of candidacy, no PPP election will be held for that major political party. NRS 298.650(2). If a PPP election is held, the counties administer the election. NRS 298.690-700. The county clerks must distribute sample ballots, establish polling places for early and day-of voting, and permit voting by mail ballot and military-overseas ballot. NRS 298.690(1).

The results of any PPP election are not binding on a major political party. NRS 298.720 details what happens after the election: the counties must canvass the returns, the Secretary of State must compile the returns, the Secretary of State must make out and file an abstract of the returns, and the Secretary of State must certify the number of votes received by each qualified candidate to the major political party's state central and

---

[1] For 2023, declarations of candidacy could be submitted through October 16. NRS 298.660, 293.1275(2).

national committees. There are no further requirements. Throughout the entire PPP election process, no major political party is required to do anything or be bound by any results.

While Castro claims in his Emergency Application that "the Nevada Supreme Court has seemingly intervened" in connection with the PPP election, the litigation Castro is referencing has no bearing on whether the Nevada Republican Party will hold a caucus. In the litigation, the Nevada Republican party claimed that the PPP election process was unconstitutional. The Secretary of State argued that the PPP election process was indeed constitutional but maintained that the Nevada Republican Party could hold a caucus to select its delegates. In any event, the parties have agreed to dismiss the lawsuit with prejudice and will be submitting a stipulation of dismissal for filing shortly. Ex. 2, Stipulation for Dismissal with Prejudice and Order, *Nevada Republican Party v. Aguilar*, Case No. 23 OC 00051 1B (1st Judicial Dist. Court Nev.).

### C. The PPP Election Is Already Underway

The PPP election is scheduled for February 6, 2024. NRS 298.650(1). Ballot printing is underway, Ex. 1, Decl. of Mark Wlaschin ¶ 4, and ballots have already started being sent to voters: voters entitled to receive military-overseas ballots were required to be sent their ballots no later than December 23, 2023, 52 U.S.C. § 20302(a)(8)(A); NRS 293D.320(1); and out-of-state residents were required to be sent their ballots no later than December 28, 2023. NRS 293.26911(5)(a)(2). And other deadlines for sending ballots are fast approaching: in-state residents must be sent their ballots by January 17, 2024, NRS 293.26991(5)(a)(1); and newly registered voters or voters with updated registrations must be sent their ballots by January 23, 2024, NRS 293.26911(1).

In fact, votes have already been cast for the PPP election. As of this filing, at least 90 ballots have been received from voters. Ex. 1, Decl. of Mark Wlaschin ¶ 3.

///
///
///

## III.   LEGAL STANDARDS

### A.   Emergency Relief

Pursuant to LR 7-4(a), in making his "[w]ritten request[] for judicial assistance in resolving an emergency dispute," Castro was required to submit a declaration describing, among other things, the nature of the emergency and a certification of when and how he attempted to meet-and-confer with other affected people or entities. LR 7-4(c) authorizes the Court to deny an emergency request that does not comply with the requirements of LR 7-4(a). *See, e.g.*, *Snow Covered Capital, LLC v. Fonfa*, Case No. 2:22-cv-01181-CDS-BNW, 2023 WL 3884631, at *3 (D. Nev. June 8, 2023) (denying emergency motion that did not adequately justify the emergency); *MST Mgmt., LLC v. Chicago Doughnut Franchise Co.*, Case No. 2:21-cv-00360-JAD-DJA, 2021 WL 7907621, at *2 (D. Nev. Dec. 7, 2021) (denying emergency motion because parties had not met and conferred and movant had failed to identify an emergency).

### B.   Injunctive Relief

The analyses for a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To be entitled to his requested relief, Castro therefore "must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc*, 555 U.S. 7, 20 (2008). In cases like this one, where the party opposing injunctive relief is a government entity, the potential hardship and the public interest considerations are merged. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

The purpose of a temporary restraining order and a preliminary injunction is to maintain the status quo before judgment. *See Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963); *Salvador v. Nat'l Default Servicing Corp.*, Case No. 2:13-CV-1011 JCFM (GWF), 2013 WL 3049084, at *1 (D. Nev. June 13, 2013). The status quo is

///

"the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd.*, 316 F.2d at 808-09.

Delay in requesting a temporary restraining order or preliminary injunction weighs against granting such relief. *See Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *UnifySCC v. Cody*, Case No. 22-cv-01019-BLF, 2022 WL 686310, at *1 (N.D. Cal. Mar. 8, 2022) ("Plaintiffs are not entitled to a temporary restraining order because they have unnecessarily delayed seeking this relief."). "Delays of one month or more are common grounds for denying motions for temporary restraining orders, and some courts deny temporary relief based on delays of as little as ten days." *UnifySCC*, 2022 WL 686310, at *1 (collecting cases).

## IV. ARGUMENT

### A. The Emergency Application is Deficient

Castro has not complied with LR 7-4. He has not submitted a declaration explaining why emergency relief is necessary. While Castro may cite to his FAC as support, *see* Emergency Application, ECF No. 52 at 9, the FAC contains almost no discussion of the caucus, and no discussion of any emergency, *see* FAC, ECF No. 21 ¶¶ 16, 18. Moreover, Castro does not offer sufficient detail about his attempts to meet-and-confer with the Secretary of State's counsel (or any other party's counsel). Castro does not specify when he contacted counsel, as required by LR 7-4(a)(3). Counsel for the Secretary of State did not receive any email from Castro regarding the Emergency Application. Ex. 3, Decl. of Laena St-Jules, Esq. ¶¶ 2-3. Castro's request for emergency relief should be denied. *See, e.g.*, *Snow Covered Capital, LLC v. Fonfa*, Case No. 2:22-cv-01181-CDS-BNW, 2023 WL 3884631, at *3 (D. Nev. June 8, 2023) (denying emergency motion that did not adequately justify the emergency); *MST Mgmt., LLC v. Chicago Doughnut Franchise Co.*, Case No. 2:21-cv-00360-JAD-DJA, 2021 WL 7907621, at *2 (D. Nev. Dec. 7, 2021) (denying emergency motion because parties had not met and conferred and movant had failed to identify an emergency).

**B. Castro Has Not Established Entitlement to Temporary or Preliminary Relief**

As an initial matter, Castro's requested relief is not appropriate because it does not seek to preserve the status quo. *Tanner Motor Livery, Ltd.*, 316 F.2d at 808-09; *Salvador*, 2013 WL 3049084, at *1. No matter how the status quo is defined, caucuses would be permitted. As it currently stands, the Nevada Republican Party and the Secretary of State agree that, under Nevada law, a major political party can hold a caucus to determine its delegates, even though a PPP election will proceed. And if the status quo predates the 2021 adoption of the PPP election process, major political parties used caucuses to select their delegates.

Furthermore, Castro is improperly seeking to bind non-parties. Castro has requested that the Court order that the "Secretary of State include Donald John Trump, Vivek Ramaswamy, Ron DeSantis, Chris Christie, and Ryan Binkley on the Nevada Republican Presidential Preference Primary ballot." Emergency Application, ECF No. 52 at 6. But the Secretary of State has no connection to those candidates. The Court would therefore be unable to bind them to participate in an election they have opted out of without their appearance in this litigation. *See* Fed. R. Civ. P. 65(d)(2).

Even if Castro did not seek impermissibly to modify the status quo or bind non-parties, his request should still be denied.

**1. Castro Does Not Have a Likelihood of Success on the Merits**

While the Secretary of State does not take a position on Casto's assertions about the constitutionality surrounding the specifics of the Nevada Republican Party's forthcoming caucus, *see* FAC, ECF No. 21 ¶¶ 16, 18, Castro does not enjoy a likelihood of success on the merits because he is seeking relief that would impact non-parties who have not been joined.

Pursuant to Fed. R. Civ. P. 19(a)(1), a person must be joined in a lawsuit if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or

impede the person's ability to protect the interest." Castro seeks in his FAC to enjoin the Nevada Republican Party from holding a caucus, FAC, ECF No. 21 ¶ 18, and in his Emergency Application to require specific candidates to participate in the PPP election, Emergency Application, ECF No. 52 at 6. Enjoining the caucus and forcing candidates to participate in a process they have elected not to participate in would not be relief the Court could accord among the existing parties and would "impair or impede [the candidates'] ability to protect the interest." The Court should therefore require that the named candidates be made parties to this litigation to the extent Castro seeks to bar the Nevada Republican Party's 2024 caucus from taking place. Fed. R. Civ. P. 19(a)(2). In the absence of their joinder, Castro's lawsuit should not proceed, and Castro would have no likelihood of success on the merits.

### 2. Castro Has Failed to Establish Irreparable Harm

Castro has been on notice that the Nevada Republican Party intended to hold a caucus since at least October 2, 2023. *See* First Emergency Application Opposition, ECF No. 13 at 3. Yet he waited nearly three months to file the instant Emergency Application. This is reason enough to deny the request for a temporary restraining order. *See UnifySCC*, 2022 WL 686310, at *1. And it severely undercuts Castro's request for a preliminary injunction, especially as the PPP election is now underway. *See Lydo Enters., Inc.*, 745 F.2d at 1213-14.

Moreover, Castro does not explain how *he* would be irreparably harmed absent injunctive relief; his assertions of harm all relate to *others*. Emergency Application, ECF No. 52 at 6. Nor could he. Castro chose to participate in the PPP election, not the caucus.

### 3. The Balance of Equities and Public Interest Weigh Against Castro

The balance of equities and public interest weigh strongly in favor of denying Castro's request that the Secretary of State add candidates to the ballots of an election that is already underway. Emergency Application, ECF No. 52 at 6. While Castro nakedly asserts it would be in the interest of Nevada taxpayers to require all Nevada Republican

Party presidential candidates to participate in the PPP election, *id.* at 6, Castro ignores that this would impose extreme additional costs to re-print and re-send ballots on a massively expedited basis.

Castro also ignores that his request would require the Secretary of State to violate federal and state law. Ballots were required to be sent to military-overseas voters by December 23, 2023, 52 U.S.C. § 20302(a)(8)(A); NRS 293D.320(1); and to out-of-state residents by December 28, 2023, NRS 293.26911(5)(a)(2). And at least 90 votes have already been cast. Ex. 1, Decl. of Mark Wlaschin ¶ 3. There is also nothing in Nevada law that would permit the Secretary of State to add candidates to the PPP election ballot if they did not file declarations of candidacy. *See* NRS 298.660. The period to file declarations of candidacy has long since passed. *Id.*

Castro's request comes far too late and would throw a process with an already almost impossibly tight schedule into chaos. It would also require the Secretary of State to violate law. His Emergency Application should be denied.

**V.     CONCLUSION**

For the foregoing reasons, the Court should deny Castro's Emergency Application.

DATED this 4th day of January 2024.

                        AARON D. FORD
                        Attorney General

                        By: */s/ Laena St-Jules*
                            LAENA ST-JULES (Bar No. 15156)
                             Senior Deputy Attorney General
                          Office of the Attorney General
                          100 North Carson Street
                          Carson City, Nevada 89701-4717
                          T: (775) 684-1265
                          E: lstjules@ag.nv.gov

                        *Attorneys for Defendant Secretary of State*

**INDEX OF EXHIBITS**

| Exhibit No. | Exhibit Description | Number Of Pages |
|---|---|---|
| 1. | Declaration of Mark Wlaschin | 1 |
| 2. | Stipulation for Dismissal with Prejudice and Order, *Nevada Republican Party v. Aguilar*, Case No. 23 OC 00051 1B (1st Judicial Dist. Court Nev.) | 3 |
| 3. | Declaration of Laena St-Jules, Esq. | 1 |